IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

COLLEEN NIX,

       Plaintiff,

      v.                                       No. 1:24-cv-00691-KG-LF

NEW MEXICO DEPARTMENT
OF PUBLIC SAFETY, et al.,

       Defendants.

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Kevin Keiner's motion for partial summary judgment, Doc. 107.  Plaintiff Colleen Nix responded to the motion, Doc. 126, and Keiner replied, Doc. 137.  For the reasons below, the motion is denied.

## I.    *Background*

"The facts in this section are either undisputed or stated in light most favorable to the nonmovant[]." *Parraz v. UNM Bd. of Regents*, 2024 WL 3676928, at *1 (D.N.M.).  Nix alleges that Keiner, a New Mexico State Police Officer, sexually assaulted her while she was intoxicated and asleep in February 2023.  Doc. 1 ¶¶ 40–50.  At the time, Nix and Keiner were friends.  *Id.*  Nix alleges that Keiner sought a romantic relationship, while she did not.  *See* Doc. 50-1 at 19.

On the night of the incident, Nix was drinking at a bar while Keiner was on duty.  *Id.* at 3.  Nix texted Keiner that she was intoxicated.  *Id.* at 5; Doc. 87 at 16.  Upon leaving the bar, Nix became involved in a physical altercation with her brother.  Doc. 70 at 7; Doc. 87 at 8.  Nix attempted to contact another police officer but received no response; she then called Keiner.  *Id.*  Nix asked Keiner to drive her to the police station to file a report regarding the altercation.  Doc.

50 at 2–3, 6; Doc. 70 at 7.  Keiner drove to Nix's location in his police vehicle while in uniform.

Doc. 87 at 13.

Although Keiner told Nix that he would take her to the police station, he instead drove

her to his parents' residence.  Doc. 50 at 4; Doc. 70 at 4–5.  They arrived at approximately 11:15

p.m., while Keiner was still on duty.  Doc. 87 at 15.  Due to her level of intoxication, Nix lost

consciousness shortly after entering the vehicle.  Doc. 50-1 at 12–13, 17.  Her next memory was

standing in a shower with Keiner behind her, without knowing where she was.  *Id.*  She again

lost consciousness, briefly recalled seeing the flames of a pellet stove, and then fell asleep.  *Id.* at

13, 16, 18.  She "[woke] up to [Keiner] on top of her and his penis inside of" her.  Doc. 50-1 at

13.  Keiner stopped when Nix woke up.  *Id.*

Nix promptly left the residence and reported the incident to the police.  Doc. 50-7 at 3.  A

Sexual Assault Nurse Examiner ("SANE" nurse) examined her and found a 0.5 cm tear at the six

o'clock position of her vagina.  Doc. 126 at 3–4.  The SANE nurse later testified that the location

is the "most prominent place" for injury in a nonconsensual sexual encounter.  Doc. 126-2 at 3.

In April 2023, the New Mexico Department of Public Safety terminated Keiner, *see* Doc.

70-16 at 1, after an internal investigation found that he "had sexual intercourse with [Nix] while

she was not in a state of mind to consent."  Doc. 70-7 at 3.

Nix asserts three state-law claims against Keiner: battery, intentional infliction of

emotional distress ("IIED"), and negligence per se.  Doc. 1 at 10–11.[1]  Keiner moves for partial

summary judgment, arguing that no reasonable jury could find battery because Nix consented to

---

[1] Nix also brings constitutional claims against Keiner, the New Mexico State Police, and the New Mexico Department of Public Safety.  Doc. 1.  The Court has already denied Keiner's partial motion for summary judgment on the 42 U.S.C. § 1983 claim.  *See* Doc. 125.

2

the sexual contact, and that Nix's IIED and negligence per se claims are barred by immunity under the New Mexico Tort Claims Act ("NMTCA").  *See generally* Doc. 107.

## II.      *Legal Standards*

The legal standards for (A) summary judgment and (B) immunity under the NMTCA are described below.

### A.      *Summary judgment*

Summary judgment is warranted if there is "no genuine dispute of material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant "bears the initial responsibility" to identify evidence from the record demonstrating the "absence of a genuine dispute of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), meaning that the "record taken as a whole could not lead a rational trier of fact to find" for the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The burden then shifts to the nonmovant to "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324 (internal quotation marks and citation omitted).

### A.      *The NMTCA*

Under the NMTCA, governmental entities and public employees, including law enforcement officers, are immune from tort liability unless the Act waives immunity.  NMSA 1978, § 41-4-4 (1996).  Any provision of the NMTCA purporting to waive governmental immunity must be strictly construed.  *Armijo v. Dep't of Health & Env't*, 1989-NMCA-043, ¶ 6. The Act provides a limited waiver for certain enumerated torts committed by law enforcement officers, including assault, battery, false imprisonment, and false arrest, when committed "within

3

the scope of [their] duties." § 41-4-12. Conduct falling outside the "scope of duty" is not shielded. *Celaya v. Hall*, 2004-NMSC-005, ¶ 9.

### III.    Analysis

For the reasons below, the Court denies Keiner's motion for partial summary judgment on Nix's claims for (A) battery and (B) IIED and negligence per se.

#### A.    Summary judgment on the battery claim is denied.

Because genuine disputes of material fact exist as to whether Keiner committed battery against Nix, his motion for partial summary judgment is denied. Under New Mexico law, battery occurs when a person "acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and...an offensive contact with the person of the other...results." *State v. Ortega*, 1992-NMCA-003, ¶ 13 (citing Restatement (Second) Torts § 18). A contact is "offensive" if it would offend a reasonable sense of personal dignity. Restatement (Second) of Torts § 19. Consent is a complete defense to battery. *Yount v. Johnson*, 1996-NMCA-046, ¶ 17.

Viewed in the light most favorable to Nix, the record presents a genuine dispute of material fact as to whether Keiner committed battery. Nix testified that she blacked out after entering Keiner's vehicle and was unaware that he had driven her to his parents' residence. Doc. 150-1 at 12–13. Her next memory was showering and feeling Keiner behind her. *Id.* at 12–13, 17. She also recalls falling asleep and later waking to Keiner engaging in vaginal intercourse with her. *Id.* at 13, 16, 18. On this record, a reasonable jury could find that Keiner intentionally caused offensive contact with Nix without her consent.

Keiner resists this conclusion, but his arguments fail. First, he argues that no reasonable jury could find battery on the ground that Nix "cannot testify to whether she did or did not

consent" due to her intoxication and unconsciousness.  Doc. 107 at 4.  But "a person who is

asleep at the time of an assault—especially when that person [is] also intoxicated from drinking

alcohol—is incapable of appraising the nature of the sexual conduct, physically incapable of

declining participation in the act, [and] physically incapable of communicating unwillingness to

engage in the act."  *United States v. Freeman*, 70 F.4th 1265, 1273 (10th Cir. 2023).  Nix

testified that she "blacked out" from intoxication, felt Keiner behind her in the shower, and

"woke up" to find him "on top of [her] and his penis inside of [her]."  Doc. 50-1 at 13, 16, 18.

This testimony, if credited, would permit a reasonable jury to infer that Nix did not—and could

not—consent to the offensive touching.  That inference is supported by medical evidence,

including a SANE examination identifying a vaginal tear consistent with nonconsensual sexual

contact.  Doc. 126 at 3–4.  Keiner disputes Nix's account, but the question of whose story is

more credible is for the jury to resolve—not this Court at summary judgment.  *E.g.*, *Logan v.

Corning*, 159 F.R.D. 46, 50 (D. Kan. 1994) ("[S]ummary judgment is not the proper stage for the

determination of credibility or to weigh a party's evidence.").

Next, Keiner argues that Nix's claim that she was too intoxicated to consent fails "as a

matter of law" because she offers no expert testimony, while his expert opines that she "was not

incapacitated and retained the functional capacity to consent."  Doc. 107 at 6–7.  This argument,

too, goes against basic summary judgment principles.  Keiner cites no authority for his assertion

that expert testimony is required "as a matter of law" to show intoxication in a state law battery

case, and it is up to the jury to weigh the evidence and decide if the account of Keiner's expert is

more believable than Nix's own account.  *E.g.*, *Logan*, 159 F.R.D. at 50; *Cereceres v. Walgreen

Co.*, 645 F. Supp. 3d 1110, 1119 (D. Colo. 2022) ("[I]t is up to the jury to decide...what weight

to accord to [an expert's] testimony."). Partial summary judgment on Nix's state-law battery claim is therefore unwarranted.

### B.    *Summary judgment on the remaining state-law claims is denied.*

Keiner also seeks summary judgment on Nix's IIED and negligence per se claims, arguing that sovereign immunity bars those claims because the NMTCA does not waive immunity for those torts. *See* Doc 107 at 8–9; *see* also § 41-4-12. But the record presents a genuine dispute of material fact as to whether Keiner was acting within the scope of his duties when the alleged torts occurred, and therefore summary judgment is unwarranted.

An officer is acting within the "scope of duty" when performing duties "requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance." § 41-4-3(G). The relevant inquiry is whether the officer acted "with the view of furthering the employer's interest," rather than from an "external, independent, and personal motive." *Rivera v. N.M. Highway & Transp. Dep't*, 1993-NMCA-057, ¶ 7. Even when a public employee acts with a wrongful motive, the conduct remains within the scope of duty so long as there is "a connection between the public employee's actions at the time of the incident and the duties" the employee was "requested, required or authorized to perform." *Henning v. Rounds*, 2007-NMCA-139, ¶ 22 (internal citation omitted). "Whether an employee is acting within the scope of duties is a question of fact." *Celaya*, 2004-NMSC-005, ¶ 9.

Under these principles, the record presents a genuine dispute of material fact as to whether Keiner acted within the scope of his duties when he allegedly committed the state-law torts. Nix called Keiner for assistance after attempting to reach another police officer. When Keiner responded, he was on duty, in uniform, and operating a police vehicle. Doc. 50 at 2–3, 6; Doc. 70 at 7. He stated he would transport her to the police station to make a police report. Doc.

6

50 at 4; Doc. 70 at 4–5.  Instead, Keiner transported Nix to his parents' residence and allegedly engaged in sexual conduct while she was intoxicated and unconscious.  Doc. 50-1 at 13, 16, 18. From this, a reasonable jury could find that Keiner invoked his authority as a law enforcement officer to control Nix's transportation and circumstances, creating a "connection" between his official duties and the ensuing events.  *Henning*, 2007-NMCA-139, ¶ 22.  But a reasonable jury could also find that Keiner abandoned those duties and acted from an "external, independent and personal motive" by driving to a private residence and engaging in sexual intercourse with Nix. *Narney v. Daniels*, 1992-NMCA-133, ¶ 32.  Because the record supports competing inferences, the Court cannot determine whether Keiner acted within the scope of his duties at this stage.

The Courts finds *Chavez v. Los Lunas Pub. Sch. Dist.* instructive.  *See* 2011 WL 13286202, at *3 (D.N.M.).  There, a public-school teacher alleged that, following a work-related meeting, the principal blocked her from leaving his office and subjected her to unwanted sexual contact.  *Id.*  She further alleged that, after reporting the incident, the principal used his authority to terminate her.  *Id.*  The court concluded that the teacher's allegations created a genuine dispute of material fact as to whether the principal acted within the scope of his employment, precluding judgment as a matter of law under the NMTCA.  *Id.*  So too here.  Keiner's conduct supports competing inferences as to whether he acted to further his employer's interests or his own. Therefore, the scope-of-duty determination remains a question of fact for the jury.

Finally, because the parties' briefing focuses on whether the IIED and negligence per se claims are barred under the NMTCA, neither party addresses the merits of those claims.  *See* Doc. 107 at 8–9; Doc. 126 at 13.  The Court therefore declines to reach the merits at this time.  In light of the genuine dispute regarding whether Keiner was acting within the scope of his duties, the parties may submit supplemental briefing addressing whether Nix's IIED and negligence per

se claims can withstand summary judgment.  Any such briefing shall address whether the record, viewed in the light most favorable to Nix, presents a genuine dispute of material fact as to each element of those claims.

## IV.    *Conclusion*

For the reasons above, the Court denies Keiner's motion for partial summary judgment on Nix's state-law claims, Doc. 107.  Defendants may file a motion for summary judgment addressing the merits of Nix's IIED and negligence per se claims within fourteen (14) days of this Order.  Nix must file any response within fourteen (14) days thereafter, and Defendants may file a reply within seven (7) days of the response.

IT IS SO ORDERED.

/s/Kenneth J. Gonzales
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.