IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

COLLEEN NIX,

    Plaintiff,

v.                                                                                    No. 1:24-cv-00691-KG-LF

NEW MEXICO DEPARTMENT
OF PUBLIC SAFETY, et al.,

    Defendants.

### <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Defendants New Mexico Department of Public Safety and New Mexico State Police's Motion to Exclude Plaintiff Colleen Nix's Proposed Expert Witness, Andrea Taylor, Doc. 106, and Nix's Response, Doc. 128. For the reasons below, the motion is granted in part and denied in part—Taylor's opinions are admissible except to the extent that she vouches for Nix's truthfulness.

### I.    *Background*

Nix alleges that Keiner, a New Mexico State Police Officer, sexually assaulted her while she was intoxicated and asleep. Doc. 1 ¶¶ 40–50. She asserts claims under 42 U.S.C. § 1983 for violations of her Fourteenth Amendment rights; the New Mexico Civil Rights Act for violations of due process; and state law claims of battery, intentional infliction of emotional distress, and negligence per se. *See* Doc. 1.

Nix intends to introduce Taylor as an expert on psychology and forensic psychology. *See* Doc. 37 at 1–2. Taylor is a licensed clinician and retired law enforcement captain with over 20 years of experience in trauma-focused mental-health counseling. *Id.* She has a Master of Science in clinical mental-health counseling, a Master of Arts in forensic psychology, and a Bachelor of

Arts in criminology and psychology.  Doc. 128 at 4.  She specializes in Post Traumatic Stress Disorder ("PTSD"), Complex Post-Traumatic Stress Disorder ("CPTSD"), trauma assessment, and the psychological impact of sexual violence.  *Id.*

In this case, Taylor conducted a focused psychological evaluation based on standardized assessment instruments and clinical interviews.  *See* Doc. 106-3 (Taylor Expert Report).  As part of the evaluation, Taylor administered seven "self-report" evaluative instruments to Nix.  *Id.* at 9.  These questionnaires addressed mental-health symptoms, self-esteem, and traumatic experiences and generated numerical scores based on Nix's responses.  *Id.*  Taylor's Report includes a "Reference Appendix" describing each assessment tool, its scoring methodology, and supporting academic literature.  *See id.* at 14–18.  Taylor also conducted two clinical interviews during which she asked Nix about her trauma history, the alleged sexual assault, and her mental-health symptoms.  *Id.* at 10–11.  Each session lasted two hours.  *Id.*  According to Taylor, the combined use of standardized evaluative instruments and clinical interviews is the "best" and "standard" method for assessing PTSD and is grounded in her professional experience.  Doc. 128-1 at 14.

Taylor concluded "to a reasonable degree of psychological certainty" that, despite Nix's prior trauma history, Keiner's alleged sexual assault caused her current PTSD and CPTSD symptoms.  Doc. 106-3 at 12.  Specifically, the alleged assault "activated and intensified previously managed trauma vulnerabilities and produced a measurable decline in [Nix's] psychological functioning."  *Id.*  Taylor based that opinion on Nix's "test results, symptom presentation, personal narrative, and trauma chronology."  *Id.*  In particular, Taylor relied on Nix's symptoms—including panic when recounting the alleged assault, recurring nightmares and flashbacks to the incident, and dissociative episodes.  *Id.* at 11.

Keiner seeks to exclude Taylor under Federal Rule of Civil Evidence 702.  He argues that her methods are not reliable; her opinions are not based on sufficient facts or data; and that her opinions are unhelpful.  *See generally* Doc. 106.  Nix opposes the motion.  *See* Doc. 128.

## II.     *Standard of Review*

Rule 702 governs the admissibility of expert testimony.  It provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Under Rule 702, the Court's role is limited to that of a gatekeeper—to ensure that expert testimony is "reliable" and "relevant."  *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 580 (1993).  The proponent of the expert testimony bears the burden to satisfy Rule 702 by a preponderance of the evidence.  *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).  Once that threshold is met, "[t]he bases and sources of an expert's opinion...go to the weight to be assigned to that opinion—rather than admissibility—and are for the trier of fact to determine."  *Coronado v. Flowers Foods*, 2021 WL 4477910, at *1 (D.N.M.).

"The court has discretion to determine how to perform its gatekeeping function."  *In re EpiPen*, 2020 WL 1164869, at *3 (citing *Bill Barrett Corp. v. YMC Royalty Co.*, 918 F.3d 760, 770 (10th Cir. 2019)).  A district court may satisfy its gatekeeping role without a formal *Daubert* hearing "so long as the court has sufficient evidence to perform 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'"  *Goebel v. Denver & Rio Grande W. R.R.*, 215 F.3d 1083, 1087 (10th Cir. 2000) (quoting *Daubert*, 509 U.S. at 597).

### III.    *Analysis*

The Court concludes that (A) Taylor's methodology is reliable; (B) her opinions are grounded in sufficient facts and data; and (C) her testimony is helpful insofar as she testifies about trauma victims' behavior generally, but not insofar as she opines on Nix's credibility.

### A.    *Taylor's methodology is reliable under 702(c)–(d).*

First, Keiner argues that Taylor's methodology is unreliable under Rules 702(c)–(d).  Doc. 106 at 5, 7.  The Court disagrees.  To determine whether an expert's testimony is reliable, the "court must assess the reasoning and methodology underlying the expert's opinion."  *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006) (internal quotation marks and citation omitted).  Typically, a court considers the following nonexclusive factors:

> (1) whether the theory at issue can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether there is a known or potential rate of error and whether there are standards controlling the methodology's operation; and (4) whether the theory has been accepted in the relevant scientific community.

*Daubert*, 509 U.S. at 593–94.  In the area of soft science, indicia of reliability can include "professional experience, education, training, and observations" rather than "research, theories and opinions."  *United States v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2006).  Even so, "[t]he expert must explain the methodologies and principles supporting the opinion."  *Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010).  "The Court must also scrutinize an expert's opinion to make sure that there is not too wide an analytical gap between the data and the expert's conclusion."  *Mata v. Cir. City Stores*, 2008 WL 5622537, at *1 (D.N.M.) (citing *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003)).

Under these principles, Taylor's opinions are the product of a reliable methodology.  She employed a multi-method approach to screen Nix for PTSD and CPTSD by administering seven diagnostic questionnaires and conducting two clinical interviews.  Doc. 106-3 at 9–10.  She testified

that this combined approach is the "best" and "standard" method for assessing PTSD and is grounded in her professional experience as a mental-health counselor.  Doc. 128-1 at 14.  She also cites academic literature supporting each diagnostic tool.  Doc. 106-3 at 14–18.  In explaining her methodology in her Report and deposition, Taylor leaves no analytical gap between her methods and conclusions.  *See Dodge*, 328 F.3d at 1221; *see, e.g.*, Doc. 106-3 at 14; Doc. 128-1 at 1, 5–6.  The Court is satisfied that Taylor's methodology is grounded in her "professional experience, education, training, and observations."  *Simmons*, 470 F.3d at 1123.

Keiner's arguments to the contrary are unpersuasive.  First, he argues that Taylor's opinions are unreliable because she failed to use a Clinician-Administered PTSD Scale ("CAPS-5") to diagnose Nix with PTSD "despite acknowledging CAPS-5 as the gold standard."  Doc. 106 at 6; Doc. 106-1 at 1.  But "Rule 702 and *Daubert* do not require an expert to use the best method available, they only require that the evidence be relevant and reliable."  *Bullock v. Daimler Trucks N. Am.*, 2010 WL 3922084, at *4 (D. Colo.).  As discussed above, Taylor's methodology is reliable because it is grounded in her professional experience.  Doc. 128 at 7–8.  Keiner may challenge Taylor's failure to formally administer a CAPS-5 examination through cross-examination.

Next, Keiner challenges Taylor's conclusion that Nix has Complex PTSD because "Complex PTSD is not a distinct diagnosis under the DSM-5."  Doc. 106 at 8.  But the "focus" of a *Daubert* inquiry "must be solely on principles and methodology, not on the conclusions that they generate."  *Daubert*, 509 U.S. at 580.  To the extent a court may scrutinize an expert's conclusions, it is only to determine whether there is "too wide an analytical gap between the data and the expert's conclusion."  *Mata*, 2008 WL 5622537, at *1.  Taylor sufficiently explained each step of her analysis and the basis for her conclusions.  The Court's inquiry ends there.

Keiner also argues that Taylor's opinions are unreliable because she failed to perform any differential etiology or rule out alternative causes of Plaintiff's PTSD symptoms.[1]  Doc. 106 at 11. Keiner states that "[a]n expert's failure" to use a differential etiology "renders the opinion inadmissible."[2]  *Id.*  The Court disagrees.  Differential etiology is simply one method of assessing causation in the medical context.  *See Bitler v. A.O. Smith*, 400 F.3d 1227, 1237 (10th Cir. 2005) (concluding that differential diagnosis "is a valid scientific technique to establish causation"); *Goebel*, 215 F.3d at 1089.  Keiner's assertion that Rule 702 "*requires* an expert to engage in a reasoned differential etiology" is unsupported.  Doc. 106 at 11 (emphasis added).  To the contrary, the Tenth Circuit has questioned the reliability of the technique.  *See Hollander v. Sandoz Pharms*, 289 F.3d 1193, 1209 (10th Cir. 2002) (excluding a differential diagnosis that lacked independent corroborating evidence).  Taylor's failure to conduct one here is not fatal.

Regardless, Taylor accounts for alternative causes of Nix's symptoms and distinguishes between Nix's baseline functioning and her post-incident decline.  *See Cooper v. Smith & Nephew*, 259 F.3d 194, 202 (4th Cir. 2001) (noting that an expert need not "rule out every possible alternative cause" of a plaintiff's condition); *see also Goebel*, 215 F.3d at 1089.  Taylor acknowledges Nix's preexisting anxiety and extensive trauma history, including childhood abuse and prior violence.  Doc. 106-3 at 11.  Keiner may challenge the significance Taylor assigns to each competing cause of Nix's symptoms through cross-examination.  *See Cooper*, 259 F.3d at 202 ("[T]he alternative causes suggested by a defendant normally affect the weight that the jury should give the expert's testimony and not" its "admissibility").

### B.    *Taylor's methodology is based on sufficient facts and data under 702(b).*

---

[1] Keiner addresses this issue in a standalone section, but the argument is properly understood as a challenge to the reliability of Taylor's methodology and opinions.

[2] Differential diagnosis is the process by which a physician "rule[s] in all scientifically plausible causes or the injury" then "rules out the least plausible causes of injury until the most likely cause remains."  *Hollander v. Sandoz Pharms.*, 289 F.3d 1193, 1209 (10th Cir. 2002).

Keiner next argues that Taylor's opinions are not based on sufficient facts or data under Rule 702(b). The Court disagrees and will not exclude Taylor on that basis. Sufficiency is a "function" of "what is deemed sufficient by experts in the pertinent field when working outside the courtroom." *See* Wright & Miller, Fed. Prac. & Proc. § 6268 (2025). The trial court should limit its inquiry under Rule 702(b) to "whether the witness obtained the amount of data that the methodology itself demands." *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1223 (D. Colo. 2008). While an expert may "base her opinion on something less than all the pertinent facts or data," she cannot "cherry pick[] favorable data...but ignore[] a significant quantity of other important facts." *Republican Party of N.M. v. Balderas*, 2021 WL 5578869, at *3 (D.N.M.) (quoting Wright & Miller § 6268); *see also Smith v. Illinois Dep't of Trans.*, 936 F.3d 554 (7th Cir. 2019).

Taylor relies on sufficient facts and data here. She concluded, "to a reasonable degree of psychological certainty," that the alleged sexual assault caused Nix's PTSD and CPTSD symptoms. Doc. 106-3 at 12. Taylor based that opinion on Nix's "test results, symptom presentation, personal narrative, and trauma chronology," and testified that her methodology was "standard" and grounded in her professional experience. *Id.* at 12; Doc. 128-1 at 14. The Court is satisfied that Taylor did not selectively "cherry pick" favorable facts but relied on the type of information reasonably considered by mental-health professionals conducting trauma assessments. *Balderas*, 2021 WL 5578869, at *3.

Keiner claims that Taylor improperly relied on Nix's self-report without "independently verify[ing]" the information through medical or therapy records, the Sexual Assault Nurse Examiner ("SANE") exam, or other "objective" evidence. Doc. 106 at 9. But the Court does not "require[] every expert to undertake an independent evaluation of the entire record to determine what he or she did or did not need to consider." *Leon v. Kelly*, 2009 WL 1300936, at *18 (D.N.M.).

7

Taylor testified that it is "standard" to rely on self-reported symptoms to form diagnostic opinions—that is all the Court requires under 702(b).  Doc. 128-1 at 14.  Keiner may use Nix's medical records to cross-examine Taylor or otherwise attempt to cast doubts on her conclusions, but her failure to rely on medical records does not render her opinions inadmissible.

### C.    Portions of Taylor's testimony are unhelpful under 702(a).

Finally, Keiner argues that portions of Taylor's proposed testimony are not "helpful" under Rule 702(a).  Doc. 106 at 12–13.  Specifically, Keiner challenges Taylor's assertions that Nix was truthful in reporting the alleged assault; trauma victims "have no gain" in being untruthful; and gaps in Nix's deposition testimony can be explained by dissociation or freezing.  Doc. 106 at 13.  The Court agrees in part and limits such testimony.

Under Rule 702(a), expert testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."  *Daubert*, 509 U.S. at 591 (internal quotation marks and citation omitted).  In assessing whether testimony will assist the trier of fact, district courts consider several factors, including whether the testimony "is within the juror's common knowledge and experience," and "whether it will usurp the juror's role of evaluating a witness's credibility."  *Rodriguez–Felix*, 450 F.3d at 1123.  An expert may not "vouch for the credibility of another witness," as such testimony "encroaches upon the jury's vital and exclusive function to make credibility determinations."  *United States v. Adams*, 271 F.3d 1236, 1245 (10th Cir. 2001); *see also United States v. Charley*, 189 F.3d 1251, 1264 (10th Cir. 1999).

Under these principles, Taylor may not vouch for Nix's truthfulness at trial.  Taylor may not testify, for example, that Nix was truthful in reporting the incident or that inconsistencies in Nix's account resulted from a trauma response.  Those determinations remain within the exclusive province of the jury.  *Charley*, 189 F.3d at 1264.  The Court also bars Taylor from opining that

8

trauma victims "have no gain" in being untruthful—such testimony crosses the line into improper bolstering by suggesting that the jury should accept Nix's account.

This limitation does not preclude Taylor from testifying about the experiences and behaviors of trauma victims generally. Expert testimony offering "general and conditional opinions" regarding patterns commonly observed in sexual-abuse victims is admissible. *See Charley*, 189 F.3d at 1264; *see e.g.*, *United States v. Chaco*, 801 F. Supp. 2d 1200 (D.N.M. 2011); *United States v. Harry*, 20 F. Supp. 3d 1196 (D.N.M. 2014). Taylor may testify, for example, that sexual-assault victims may experience memory lapses, dissociation, and freezing responses. Such testimony assists jury members in evaluating Nix's testimony without telling them what to believe—an important distinction under 702(a).

## IV.    Conclusion

For the reasons above, the Court grants in part and denies in part Keiner's motion to exclude, Doc. 106. Taylor's opinions satisfy Rule 702 and are therefore admissible, except to the extent that she opines on Nix's credibility.

IT IS SO ORDERED.

/s/Kenneth J. Gonzales_____
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.

9