IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

COLLEEN NIX,

    Plaintiff,

v.                                     No. 1:24-cv-00691-KG-LF

NEW MEXICO DEPARTMENT
OF PUBLIC SAFETY, et al.,

    Defendants.

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants New Mexico Department of Public Safety and New Mexico State Police's Motion to Exclude Plaintiff Colleen Nix's Proposed Expert Witness, Elizabeth Thomson.  Doc. 111.  For the reasons below, the motion is granted in part and denied in part.

### I.    *Background*

Nix brings constitutional claims under 42 U.S.C. § 1983 and New Mexico state-law claims against Kevin Keiner, the New Mexico Department of Public Safety, and the New Mexico State Police Department.  *See* Doc. 1.  She alleges that Keiner, a New Mexico State Police Officer, sexually assaulted her while she was intoxicated and asleep.  Doc. 1 ¶¶ 40–50.

Thomson is a retired law enforcement professional with more than two decades of experience.  *See* Doc. 120-1 (Thomson Resume).  From 1999 to 2017, Thomson served as an officer with the Albuquerque Police Department ("APD"), retiring at the rank of sergeant.  *Id.*  She held a variety of investigative and supervisory roles at APD, including as a cold case investigator, a Homicide Unit sergeant, and a Crisis Intervention Team sergeant.  Doc. 120 at 5–6.  As a supervisor on the Homicide team, she attended the Police Oversight Commission, where she answered

questions about officer investigations, policy, and procedure.  Doc. 120-1 at 3.  In 2015, she played a role in APD's compliance with the 2015 U.S. Department of Justice Settlement Agreement, responsible for drafting and updating several key Standard Operating Procedures, including Investigations, Use of Force, Body-Worn Cameras, Detention of Witnesses, and case management protocols.  *Id.*  She has received specialized training in investigating sexual assault, abuse, domestic violence, and supervisory reporting and investigations.  Doc. 120 at 3–4.  Courts at the state and federal levels, including this Court, have qualified her as an expert.  *Id.* at 6; *see Lilley v. CVS Health*, 2019 WL 1316401, at *5 (D.N.M.) (Gonzales, J.).

In this case, Thomson reviewed the Las Vegas Police Department's complete investigative file, officer statements, deposition transcripts of Keiner and Nix, and the New Mexico State Police internal affairs report.  Doc. 111-1 at 17 (Thomson Expert Report).  Based on that review, she concluded that: (1) Keiner violated professional and ethical standards; (2) Keiner violated New Mexico State Police policies; (3) the sexual encounter between Keiner and Nix was not consensual; (4) Keiner abused his supervisory authority; (5) the administrative investigation and resulting termination were justified; (6) the record reflects deficiencies in accountability, documentation, and field supervision; and (7) Keiner's shifting narrative and selective lack of recall raise serious credibility concerns.  *Id.* at 33–34.

Defendants seek to limit Thomson's testimony under Federal Rule of Evidence 702.  *See* Doc. 111.  Nix opposes the motion.  *See* Doc. 120.

## II.     *Standard of Review*

Under Rule 702, "[a] district court may allow expert testimony '[i]f [the expert's] scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue.'"  *United States v. Adams*, 271 F.3d 1236, 1245 (10th Cir. 2001) (citing Fed. R. Evid. 702); *see United States v. Hill*, 749 F.3d 1250, 1258 (10th Cir.

2014) ("The touchstone of admissibility under Rule 702 is the helpfulness of the evidence to the trier of fact.").  The Court must act as a gatekeeper under Rule 702 to ensure the reliability and relevance of all proffered expert testimony.  *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (citing *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993)).  Indeed, "[t]he [United States] Supreme Court has held that Rule 702 imposes a special obligation upon a trial judge to ensure that all expert testimony, even non-scientific and experience-based expert testimony, is both relevant and reliable."  *Adams*, 271 F.3d at 1245.

In addition, any proffered expert testimony must pass muster under Federal Rule of Evidence 403.  "[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.

### III.    Analysis

As a threshold matter, Thomson is qualified.[1]  Rule 702 adopts a liberal definition of expertise, recognizing that a witness may be qualified by "knowledge, skill, experience, training, or education."  Fed. R. Evid. 702 Advisory Committee's Note (1972).  Accordingly, an expert "should not be required to satisfy an overly narrow test of his own qualifications."  *Gardner v. Gen. Motors Corp.*, 507 F.2d 525, 528 (10th Cir. 1974) (internal quotation omitted).  The Tenth Circuit has recognized that law enforcement officers may acquire "specialized knowledge of criminal practices" to support expert testimony.  *United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009).

Thomson is qualified based on her twenty years of law enforcement experience and extensive training.  For instance, she may testify regarding patterns in sexual assault cases due to

---

[1] Defendants do not challenge Thomson's qualifications in their opening motion but raise the issue for the first time in their reply.  *See* Doc. 141 at 2–5.  The Court addresses her qualifications for completeness.

her training, field experience, and six years of specialized service on a crisis intervention team. *See* Doc. 120-1 at 2–3. She may testify regarding police procedures based on her service as a homicide sergeant, where she developed and updated departmental policies and standard operating procedures. *See id.* In addition, her participation in Police Oversight Commission proceedings qualifies her to address officer conduct, including investigations, policy, and procedure. *See id.*

Even so, Defendants seek to limit Thomson's testimony. First, they challenge her opinions regarding Nix's and Keiner's credibility as usurping the jury's role. Specifically, they seek to preclude Thomson from testifying that Nix was truthful while Keiner was not, or from characterizing the parties' statements as "consistent" or "inconsistent." Doc. 111-1 at 4–5, 8. The Court agrees and prohibits such testimony.

An expert may not opine on issues that a "jury is capable of assessing for itself." *Thompson v. State Farm Fire & Cas.*, 34 F.3d 932, 941 (10th Cir. 1994). Therefore, an expert may not "vouch for the credibility of another witness," as such testimony "encroaches upon the jury's vital and exclusive function to make credibility determinations." *Adams*, 271 F.3d at 1245. Under this principle, Thomson may not opine on the truthfulness of any witness or state that Nix's account is more believable than Keiner's.

Nix contends that Thomson does not make credibility determinations but instead applies her investigative expertise to identify "consistencies and inconsistencies" in the parties' statements. Doc. 120 at 12. The Court is not persuaded. Even when framed in these terms, such testimony effectively invites the jury to conclude that accounts deemed "consistent" are credible, while those labeled "inconsistent" are not. *See United States v. Charley*, 189 F.3d 1251, 1264 (10th Cir. 1999). Evaluating the coherence of witness accounts and identifying gaps in the evidence fall squarely within the jury's province.

Next, Defendants seek to preclude Thomson from testifying that the evidence is consistent with a nonconsensual sexual encounter.  Doc. 111 at 10; *see, e.g.*, Doc. 111-1 at 7–8, 10.  The Court declines to limit such testimony.  Expert testimony offering "general and conditional opinions" about whether behavior aligns with patterns observed in sexual abuse cases is permissible.  *Charley*, 189 F.3d at 1264; *see also United States v. Harry*, 20 F. Supp. 3d 1196 (D.N.M. 2014) (allowing SANE nurse to testify that sexual assault victim's injuries were consistent with her version of events—that defendant raped her).  Accordingly, Thomson may testify, based on her training and experience, that the evidence in this case—including Nix's demeanor and the medical report—is consistent with patterns she has observed in sexual assault investigations.

Defendants argue that such testimony amounts to improper credibility bolstering because Thomson is essentially vouching for Nix.  But the Tenth Circuit draws a clear line between expert testimony that opines on a witness's credibility and testimony that merely aligns with a witness's account.  *United States v. Rodriguez*, 125 F. Supp. 3d 1216, 1236 (D.N.M. 2015) (noting that the Tenth Circuit's "bar on bolstering extends only to expert testimony concerning the witness' credibility and not to expert testimony that is consistent with another witness' testimony"); *see, e.g.*, *Charley*, 189 F.3d at 1264 (permitting testimony that victims' actions and symptoms were consistent with child sexual abuse, while excluding testimony that the victims were truthful).  Thomson's opinions may coincide with Nix's account, but that alone does not render them inadmissible—otherwise, expert testimony would generally be excluded.

Finally, Defendants move to preclude Thomson from testifying that Keiner was acting under "color of law" because such testimony would usurp the role of the jury.  *See* Doc. 111 at 7; *see, e.g.*, Doc. 111-1 at 3, 12.  The Court disagrees.  Rule 704 allows an expert to opine on an ultimate issue not involving *mens rea.*  That said, experts are still barred from presenting bare, baseless legal conclusions telling the fact-finder how to rule.  *United States v. Richter*, 796 F.3d

1173, 1195 (10th Cir. 2015).  Groundless legal conclusions are deemed unhelpful to the fact-finder and, because unhelpful expert opinions are barred under Rule 702(a), the Tenth Circuit does not permit experts to deliver such conclusions.  *Id.*

In this case, the Court finds that Thomson's proposed testimony—that Keiner was acting under "color of law" when he encountered Nix—does not usurp the jury's fact-finding role.  Jurors are unlikely to understand how police officers are trained to recognize whether they are acting under "color of law."  Thomson's testimony will assist the jury in understanding that training, how officers are taught to exercise official authority, and whether Keiner's conduct reflected the exercise of that authority during the encounter with Nix.  Doc. 111-1 at 12.  For instance, Thomson testified that color of law is "a commonly trained concept in law enforcement, that when you put on your uniform, you're in your marked police car [and] you're engaging with civilians."  *Id.*

Keiner argues that Thomson's opinion that he acted under "color of state law" is an impermissible legal conclusion.  The Court disagrees.  Whether an officer acted under color of law is only one element of a § 1983 claim; it is not the ultimate issue the jury must decide.  Courts routinely permit experts to testify regarding discrete elements of a claim or offense where the testimony would assist the jury in understanding specialized concepts.  *See, e.g.*, *United States v. Henderson*, 2009 WL 10695556, at *2 (D. Kan.) (permitting federal agent testimony that firearm traveled in interstate commerce in felon-in-possession case); *Austin v. Brown*, 2024 WL 6475183, at *10 (D. Colo.) (allowing police-practices expert to testify whether officers acted consistently with their training in excessive-force case).  Here, too, Thomson's testimony provides specialized context rather than instructing the jury how to decide.

Finally, Keiner argues that Thomson uses the phrase "color of law" not in its legal sense, but as a "technical" and "generally accepted" law-enforcement concept, thereby risking confusing the jury.  Doc. 120 at 14; *see* Fed. R. Evid. 403 (permitting exclusion of relevant evidence where its

probative value is substantially outweighed by a danger of "confusing the issues" or "misleading the jury").  The Court agrees that some divergence between the legal meaning of "color of law" and its use in law-enforcement training could create a risk of confusion.  But that risk does not substantially outweigh the testimony's probative value in explaining law-enforcement training and the exercise of official authority under Rule 403.  To the extent Thomson uses "color of law" inconsistently with the governing legal standard, the Court will address such objections at trial.

## IV.    *Conclusion*

For the reasons above, the Court grants in part and denies in part Defendants' motion to exclude Thomson, Doc. 111.  Thomson's testimony is admissible, except to the extent that she offers testimony regarding the credibility of any witness.

IT IS SO ORDERED.

/s/Kenneth J. Gonzales_____
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document.  Electronically filed documents can be found on the Court's PACER public access system.