IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

COLLEEN NIX,

     Plaintiff,

v.                                  No. 1:24-cv-00691-KG-LF

NEW MEXICO DEPARTMENT
OF PUBLIC SAFETY, et al.,

     Defendants.

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff Colleen Nix's Motion to Exclude Affidavit and Testimony of Steven Fishburn, Doc. 109,[1] Defendant Kevin Keiner's Response, Doc. 129, and Nix's Reply, Doc. 134. The Court also considers Fishburn's expert report, Doc. 148. For the reasons below, the Court grants the motion in part and denies it in part. Fishburn may testify regarding Nix's estimated blood alcohol concentration ("BAC"), but not that Nix had the capacity to consent to sexual intercourse.

## I.    *Background*

Nix alleges that Keiner, a New Mexico State Police Officer, sexually assaulted her while she was intoxicated and asleep. Doc. 1 ¶¶ 40–50. She asserts claims under 42 U.S.C. § 1983 for violations of her Fourteenth Amendment rights; the New Mexico Civil Rights Act for violations of due process; and state law claims of battery, intentional infliction of emotional distress, and negligence per se. *See* Doc. 1.

Fishburn is a board-certified medical toxicologist and is certified in addiction medicine. Doc. 148 at 6. Keiner intends to introduce him to testify on the "medical, behavioral, and

---

[1] The unredacted motion is lodged at Doc. 110. Because the redacted and unredacted motions are otherwise identical, this Order resolves both.

1

toxicologic factors" related to the incident. *Id.* at 3. To prepare his report, Fishburn reviewed a timeline survey prepared by counsel; an excerpt from Nix's answers to interrogatories; video and audio recordings; medical records; and transcripts. *Id.* at 3. He concluded that:

> 1. Ms. Colleen Nix consumed an estimated 2 to 5 alcoholic beverages on the evening of February 11, 2023. She began drinking at 05:40 pm and likely stopped by 09:00 pm. Shortly afterward she was involved in a verbal and physical altercation with family members.
> 2. At around 11:00 pm she contacted Officer Kevin Keiner, who picked her up and drove her to his parents' home, where they had sexual intercourse.
> 3. By approximately 1:00 am of February 12, 2023, Ms. Nix was observed on the video camera of Officer Erica Garcia. On this recording her behaviors and speech remained logical, her speech was clear, her movements were purposeful, and she demonstrated accurate recall.
> 4. Based on her observed behavior her estimated blood alcohol concentration (BAC) at 1:00 am was likely between 0.06% and 0.08%. Extrapolating backward, her BAC around 11:00 pm would have been approximately 0.09 to 0.11%, These levels reflect impairment but are not associated with loss of functional comprehension or incapacitation.
> 5. Intoxication refers to the presence of alcohol in the body causing behavioral or cognitive impairment, incapacitation is more severe and implies that individual is functionally unable to comprehend the situation. Ms. Nix was intoxicated, demonstrating signs of impairment, but retained the ability to engage meaningfully with her surroundings and was not incapacitated.
> 6. Based on the behavioral evidence, including clear speech, coherent thought processes, purposeful movement, and intact memory, it is within a reasonable degree of medical probability that Ms. Nix was not incapacitated and retained the functional capacity to consent at the time of the incident.

*Id.* at 6–8.

Fishburn testified that his opinions were based on the scientific process he routinely employs in toxicology cases: applying his professional experience and relevant medical literature to estimate Nix's level of intoxication. Doc. 109 at 26–27. Specifically, he evaluated Nix's body movements, speech patterns, responsiveness, and self-reported symptoms. *Id.* He testified that he accounted for Nix's age, gender, weight, and other individual characteristics by using scientific ranges that incorporate variability, the accepted method for addressing unknowns in his field. *Id.* Finally, he testified that another expert could replicate his analysis. *Id.*

2

Nix challenges Fishburn's testimony on two grounds. *See generally id.* First, she argues that Fishburn's opinions are unreliable because he failed to consider relevant evidence, including officers' observations that she was experiencing "dissociative amnesia" and the effects of her gender and prescribed medication on her level of intoxication. *Id.* at 4–5. Second, she seeks to exclude the opinion that she retained the capacity to consent to sexual intercourse because it is within the common understanding of lay people. *Id.* at 7–8. Alternatively, she contends that the opinion should be excluded under Federal Rule of Evidence 403. *Id.* at 8. Keiner opposes the motion. *See* Doc. 129.

## II. Standard of Review

Rule 702 governs the admissibility of expert testimony. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under Rule 702, the Court's role is limited to that of a gatekeeper—to ensure that expert testimony is "reliable" and "relevant." *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 597 (1993). The proponent of the expert testimony bears the burden to satisfy Rule 702 by a preponderance of the evidence. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). Once that threshold is met, "[t]he bases and sources of an expert's opinion...go to the weight to be assigned to that opinion—rather than admissibility—and are for the trier of fact to determine." *Coronado v. Flowers Foods*, 2021 WL 4477910, at *1 (D.N.M.).

"The court has discretion to determine how to perform its gatekeeping function." *In re EpiPen*, 2020 WL 1164869, at *3 (D. Kan.) (citing *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918

F.3d 760, 770 (10th Cir. 2019)).  A district court may satisfy its gatekeeping role without a

formal *Daubert* hearing "so long as the court has sufficient evidence to perform the task of ensuring

that an expert's testimony" is reliable and relevant.  *Goebel v. Denver & Rio Grande W. R.R.*, 215

F.3d 1083, 1087 (10th Cir. 2000) (internal quotation mark and citation omitted).

### III.    *Analysis*

For the reasons below, the Court concludes that (A) Fishburn's methodology is reliable

under Rule 702, but (B) his opinion that Nix had the capacity to consent to sexual intercourse is not

helpful to the trier of fact and therefore will be excluded because it intrudes on the purview of the

jury to make credibility determinations.

### A.    *Fishburn's methodology is reliable under 702(c)–(d).*

First, Nix argues that Fishburn's methodology is unreliable, invoking Rules 702(c)–(d).

Doc. 109 at 4–7.  The Court disagrees.  To determine whether an expert's testimony is reliable, the

"court must assess the reasoning and methodology underlying the expert's opinion."  *United States*

*v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006) (citation omitted).  Typically, a court

considers the following nonexclusive factors:

> (1) whether the theory at issue can be and has been tested; (2) whether the theory has
> been subjected to peer review and publication; (3) whether there is a known or
> potential rate of error and whether there are standards controlling the methodology's
> operation; and (4) whether the theory has been accepted in the relevant scientific
> community.

*Daubert*, 509 U.S. at 593–94.  In the area of soft science, indicia of reliability can include

"professional experience, education, training, and observations" rather than "research, theories and

opinions."  *United States v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2006).  Even so, "[t]he expert

must explain the methodologies and principles supporting the opinion."  *Minix v. Canarecci*, 597

F.3d 824, 835 (7th Cir. 2010).  "The Court must also scrutinize an expert's opinion to make sure

that there is not too wide an analytical gap between the data and the expert's conclusion."  *Mata v.*

*Cir. City Stores*, 2008 WL 5622537, at *1 (D.N.M.) (citing *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003)).

Under these principles, Fishburn's estimation of Nix's BAC is the product of a reliable methodology. He relied on his professional experience, relevant medical literature, and the evidence in the case to make his estimation. Doc. 148 at 6–7; Doc. 109 at 26–27. He testified that this methodology is accepted in the field of toxicology and is the same process he routinely employs in toxicology cases. Doc. 109 at 26–27. By identifying the data he considered and explaining how he applied accepted toxicological principles to that data, Fishburn leaves no analytical gap between his methodology and his conclusions. *See Dodge*, 328 F.3d at 1221. The Court is therefore satisfied that Fishburn's methodology is grounded in his "professional experience, education, training, and observations." *Simmons*, 470 F.3d at 1123.

Nix's arguments to the contrary go to the weight, rather than the admissibility, of Fishburn's opinions. She argues that Fishburn's methodology is unreliable because he ignores officers' observations that she was experiencing "dissociative amnesia," and the effects of gender and her prescribed medication on her intoxication level. Doc. 109 at 4–6. She also argues that Fishburn should have read the deposition testimony of Nix and Keiner before making his conclusions. *Id.* at 7. But "the factual basis of an expert opinion goes to the credibility of the testimony rather than the admissibility." *Buchan v. Wilson*, 2013 WL 5143921, at *2 (D. Wyo.) (citing *Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 654 (10th Cir. 1991)). "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *First Data Corp. v. Konya*, 2007 WL 2116378 at *12 (D. Colo.). That is not the case here. Fishburn's opinions are supported by his professional experience and training and scientific literature about the effects of alcohol. Nix's challenges to the bases of those opinions—that he ignored key factors that

5

affected her level of intoxication—are properly addressed through cross-examination, should Nix choose to do so.

Nix also challenges the reliability of Fishburn's methodology on the grounds that he failed to perform a "Widmark" calculation of blood alcohol. But "Rule 702 and *Daubert* do not require an expert to use the best method available, they only require that the evidence be... reliable." *Bullock v. Daimler Trucks N. Am.*, 2010 WL 3922084, at *4 (D. Colo.). As discussed above, Fishburn's methodology to estimate Nix's BAC satisfies that standard. Nix may challenge also Fishburn's choice of methodology through cross-examination.

### B.      *Portions of Fishburn's testimony are excluded under 702(a).*

Next, Nix challenges Fishburn's opinions on her capacity to consent. Doc. 109 at 7–9. Specifically, Nix argues that Fishburn's opinion on consent—that Nix's BAC did not inhibit her capacity to consent to sexual intercourse with Keiner—concerns a matter within the common understanding of jurors. *Id.* at 7–8. The Court agrees and limits such testimony.

Under Rule 702(a), expert testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591 (quotation omitted). In assessing whether testimony will assist the trier of fact, district courts consider several factors, including whether the testimony "is within the juror's common knowledge and experience," and "whether it will usurp the juror's role of evaluating a witness's credibility." *Rodriguez–Felix*, 450 F.3d at 1123 (footnote omitted). An expert may not "vouch for the credibility of another witness," as such testimony "encroaches upon the jury's vital and exclusive function to make credibility determinations." *United States v. Adams*, 271 F.3d 1236, 1245 (10th Cir. 2001).

Under these principles, Fishburn may not testify as to whether Nix had capacity to consent because that determination is for the jury. Fishburn testified that he reached his conclusion by reviewing records, witness accounts, and recordings. Doc. 109 at 27. He concluded that Nix "had

the capacity to understand what was happening" to her because she was speaking in full sentences, responding to questions, and maintaining conversations. *Id.* But a jury can review the same evidence and make that determination without expert testimony. *See United States v. Stewart*, No. 22-7025, 2023 WL 6629579, at *7 (10th Cir. Oct. 12, 2023) (concluding that jurors who viewed body-camera footage could independently assess witnesses' speech, movements, and interactions to determine the effects of intoxication). Allowing Fishburn to opine on Nix's capacity to consent would risk supplanting the jury's role in evaluating evidence and assessing the credibility of Nix and other witnesses. The Court therefore excludes the opinion under Rule 702(a). Because the opinion is inadmissible under Rule 702(a), the Court does not reach Nix's Rule 403 argument.

## IV.    Conclusion

For the reasons above, Fishburn may testify regarding his estimate of Nix's BAC and the toxicological basis for that opinion. He may not testify, however, that Nix had the capacity to consent to sexual intercourse. The Court therefore grants in part and denies in part Nix's Motion to Exclude. Doc. 109; Doc. 110.

IT IS SO ORDERED.

/s/Kenneth J. Gonzales_____
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.